IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **v.**                                        Crim. Action No. 1:22CR62
                                                                  (Judge Kleeh)

**BROCK COREL PEARSON, JR.,**

    **Defendant.**

**MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 33], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 18], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 34]**

Pending before the Court is Defendant Brock Corel Pearson's *Motion to Suppress Physical Evidence* [ECF No. 18] and the *Report and Recommendation Recommending that Defendant's Motion to Suppress [ECF No. 18] Be Denied* [ECF No. 33]. Defendant Pearson filed objections to the R&R. ECF No. 34. For the reasons discussed herein, the R&R is **ADOPTED,** the motion to suppress is **DENIED,** and the objections are **OVERRULED.**

### I.    PROCEDURAL HISTORY

The Defendant, Brock Corel Pearson, Jr. ("Pearson" or "Defendant"), was indicted September 7, 2022, on one count of Unlawful Possession of a Firearm, in violation of Title 18 United States Code, Sections 922(g)(1) and 924(a)(1). On November 1, 2023, Defendant filed the subject *Motion to Suppress Physical Evidence* [ECF No. 18]. By Order dated November 1, 2023, the Court referred the motion to Magistrate Judge Michael J. Aloi to conduct a hearing and enter a report and recommendation

as to the disposition of the motion [ECF No. 19]. The Government filed its response in opposition to the suppression motion on November 9, 2023. ECF No. 22.

Thereafter, the magistrate judge conducted a hearing on Defendant's Motion on November 14, 2023, at which time the Court heard witness testimony, accepted exhibits into evidence, and heard the argument of counsel for both Defendant and the Government. On November 17, 2023, Magistrate Judge Aloi issued a Report and Recommendation ("R&R") [ECF No. 33], recommending that Defendant's Motion [ECF No. 18], be denied. The parties were given fourteen (14) days to file specific written objections to the R&R. Defendant filed objections to the R&R on December 1, 2023 [ECF No. 34].

## II.  FACTUAL BACKGROUND

During the night of March 1, 2022, Defendant was the passenger of a vehicle, driven by Zachary Ables ("Ables"), subject to a traffic stop. Officer Justin Hetherington ("Officer Hetherington") of the Shinnston Police Department initiated the stop because he observed two traffic violations: (1) the vehicle's loud exhaust system and (2) speeding.[1]

---

[1] Defendant only challenges the legality of the initial traffic stop. Thus, the Court focuses on the facts relevant to the reasonable suspicion and probable cause analysis of the initial traffic stop – the subject of Defendant's objections.

2

The following facts were deduced from a suppression hearing before Magistrate Judge Aloi on November 14, 2023, in which Officer Hetherington and Ables testified. The Government also introduced body camera footage, beginning at the time Officer Hetherington pulled the vehicle over.

Officer Hetherington testified that he initiated the traffic stop after observing Ables's vehicle traveling at a rate of speed faster than the 25 MPH speed limit. Officer Hetherington determined the vehicle was speeding through the pacing method, of which he was classroom trained. He drove behind Ables's vehicle at a consistent rate of 35 MPH. Officer Hetherington estimated that he paced the vehicle for three or four blocks. Because the distance between his police car and Ables's vehicle continued to increase, Officer Hetherington determined that Ables's vehicle was traveling faster than 35 MPH – at least ten miles over the speed limit.

Officer Hetherington testified that he also initiated the traffic stop due to the vehicle's loud exhaust. Ables's vehicle first drew Officer Hetherington's attention due to the loud exhaust. He observed that the exhaust could be heard with his patrol car's windows up and a podcast likely playing. Officer Hetherington further testified that he received on-the-job training in detecting loud exhaust.

3

Officer Hetherington additionally testified to certain body camera footage from the traffic stop. The footage reflects that Officer Hetherington told Ables and Defendant that he initiated the traffic stop due to speeding and the car's exhaust. Ables acknowledged the exhaust issue, caused by a small hole, and indicated that it was being scheduled for repair. While officer Hetherington testified that the vehicle's speed was more than 10 MPH over the speed limit, the body camera footage reflects that he told Ables and Defendant that the vehicle had been traveling 7 MPH over the speed limit. Officer Hetherington explained that he provided an inaccurate figure to see how Defendant and Ables would respond, but believes he recorded the proper speed in the incident report.

Ables also testified at the suppression hearing. Ables recalled that Officer Hetherington followed him for 50 to 100 yards, or one to two blocks, before pulling him over. Ables believed he was driving carefully and was not speeding because his license was suspended – and thus would not want to be pulled over without a valid license. However, upon review of the body camera footage during the hearing, Ables acknowledged that he did not deny to Officer Hetherington during the traffic stop that he had been speeding.

Ables further confirmed that there had been a leak in the exhaust for a couple of weeks, but he testified that he did not

4

believe it was remarkably loud. Ables estimated that his vehicle's exhaust was louder than a normal vehicle but quieter than a vehicle with a purposefully modified exhaust.

Additionally, Ables admitted to being an active heroin user at the time of the traffic stop. The body camera footage shows Ables telling Officer Hetherington that he had consumed drugs earlier in the day on March 1, 2022. Officer Hetherington further testified that Ables was shaking nervously, stuttering, and that his eyes looked abnormal at the time of the traffic stop.

Relevant to Defendant's Motion, Officer Hetherington learned through the traffic stop that there was an outstanding warrant for Defendant's arrest. Upon a search of Defendant's person subsequent to his arrest, Officer Hetherington discovered a firearm. Defendant was prohibited from possessing a firearm because he had a past felony conviction. Defendant contends that the initial traffic stop was unlawful and thus moves to suppress the evidence found on Defendant's person, including a Taurus .9mm firearm.

### III. **STANDARD OF REVIEW**

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's

recommendations" to which there are no objections. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### IV.  DISCUSSION

Defendant objects to the magistrate judge's finding that the traffic stop was lawful because it was based upon a traffic violation. ECF No. 34, at p. 4. Defendant additionally objects to the R&R on the grounds that it does not fully address the credibility of the witnesses and the conflict in their testimony. Id. at p. 5. As further elaborated upon below, the Court **OVERRULES** Defendant's objections [ECF No. 34], **ADOPTS** the R&R [ECF No. 33], and **DENIES** the motion to suppress [ECF No. 18].

   a. **Applicable Law**

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6

The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is also referred to as a Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop has been held to be constitutional when the officer's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. United States v. Sokolov, 490 U.S. 1, 7 (1989). A brief detention for investigative purposes is reasonable if an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30; see also Turmon v. Jordan, 405 F.3d 202, 205 (4th Cir. 2005).

Reasonable suspicion "defies precise definition." United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008). To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). "A host of factors can contribute to a basis for reasonable suspicion, including the

7

context of the stop, the crime rate in the area, and the nervous or evasive behavior on the suspect." Id. (Citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

The Supreme Court of the United States has "counseled lower courts to give 'due weight' to the factual inferences drawn by police officers as they investigate crime." Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). An officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981).

Importantly, a law enforcement officer is permitted to stop a vehicle when the officer observes a vehicle violating a traffic law. See United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012); See also United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (stating a traffic stop is reasonable at the outset "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. Without question, such a violation may include failure to comply with traffic laws.") (internal citation and quotation omitted). Observing a traffic violation provides sufficient justification for an officer to detain the vehicle for as long as it takes for

8

the officer to perform a routine traffic stop. Branch, 537 F.3d at 335.

In West Virginia, "[e]very motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise." W. Va. Code § 17C-15-34(a). Additionally, in West Virginia, speeding is a traffic violation. W. Va. Code § 17C-6-1.

"The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate." United States v. Sowards, 690 F.3d 583, 592 (4th Cir. 2012). "Pacing refers to the practice of a police officer using his or her own speedometer to determine the speed of the suspect's vehicle." United States v. Boggess, 444 F. Supp. 3d 730, 735 (S.D.W. Va. 2020) (finding initial traffic stop constitutional because the officer visually estimated the vehicle's speed and used the pacing method to determine the defendant was driving faster than the legal limit). See also, United States v. Jones, No. 2:22-CR-00137, 2023 WL 2581999, at *4 (S.D.W. Va. Mar. 20, 2023) (finding the stop was supported by probable cause because the officer confirmed his visual

impression that the defendant was speeding through the pacing method).

### b. The traffic stop was lawful.

Defendant objects to the R&R and contends that the initial traffic stop was unlawful because there is no video or audio evidencing the alleged traffic violations; there were no independent witnesses; and Officer Hetherington did not employ radar or other technology to determine the car's speed or the exhaust's decibel level. ECF No. 34 at p. 4. Upon careful review of the evidence, the Court disagrees and finds the initial traffic stop was lawful and supported by reasonable suspicion or probable cause. Reasonable suspicion of a traffic violation does not require audio or video proof, independent witness accounts, or the use of radar or other technology. Pacing is a lawful and reliable method to determine the speed of a suspect vehicle. See United States v. Sowards, 690 F.3d 583, 592 (4th Cir. 2012).

Reasonable suspicion, at minimum, existed to support the traffic stop because Officer Hetherington confirmed his visual estimate that Ables's vehicle was speeding with the pacing method. Officer Hetherington was trained in the pacing method and used his own vehicle to reasonably confirm his suspicion that the subject vehicle was driving approximately ten miles over the speed limit. Moreover, upon pulling the vehicle over, Officer Hetherington informed Ables and Defendant that the

10

vehicle was driving in excess of the posted speed limit. Ables's testimony confirmed that he did not dispute this fact during the traffic stop. Thus, the initial traffic stop was lawful and cannot be used as a basis for excluding the subsequently found evidence.

Moreover, the vehicle's loud exhaust served as a second and independent basis for initiating the traffic stop. Reasonable suspicion does not require an officer to identify an exhaust's decibel level to justify a traffic stop. Rather, W. Va. Code § 17C-15-34(a) requires mufflers to be in "good working order" to prevent "excessive or unusual noise". Officer Hetherington testified that he first noticed Ables's vehicle due to the loud exhaust, which he could hear with his car windows up and likely a podcast playing. While Officer Hetherington did not determine the precise decibel level of the car's exhaust, he was trained in detecting loud exhaust and used those skills. This evidence was sufficient to initiate the traffic stop. And, Officer Hetherington's reasonable suspicion was confirmed when Ables admitted that his exhaust had a hole and needed repaired. Ables's testimony, approximately a year and a half later, that he did not believe his exhaust was unusually loud – despite acknowledging the exhaust was not in good working order - is not enough to discredit the reasonable suspicion Officer Hetherington gathered prior to the traffic stop. Thus, the

11

initial traffic stop was lawful, and Defendant's objection is **OVERRULED**.

### c. The Magistrate Judge sufficiently addressed the witness's credibility.

Second, Defendant objects to the R&R, arguing that it fails to fully address the credibility of the two witnesses and the conflict in their testimony. ECF No. 34 at p. 5. The Court disagrees. The R&R sufficiently provided a basis for its credibility determinations and how the magistrate judge weighed any conflicts in the evidence. The Court **DENIES** Defendant's request to conduct a second hearing on Ables and Officer Hetherington's credibility. However, as part of its de novo review, the Court makes the following findings regarding the magistrate judge's credibility determinations based upon the testimony and evidence presented.

The magistrate judge rightfully concluded that Officer Hetherington was a credible and reliable witness. Regarding Officer Hetherington's perception of the loud exhaust, the magistrate judge specifically found the testimony credible because he convincingly explained how the vehicle caught his attention and how he knew the exhaust was unusually loud. He further testified that he was trained in detecting loud exhaust and the magistrate judge correctly noted that West Virginia law

12

does not require an officer to detect an exhaust's specific decibel level to warrant a traffic violation.

Moreover, despite Defendant's contentions to the contrary, the R&R did address the conflict with Ables's testimony regarding the exhaust. While Ables did not personally think his exhaust was very loud, he acknowledged during the traffic stop that the vehicle needed repairs and testified it was louder than a car with a properly functioning muffler. Thus, Ables's testimony regarding the exhaust did not outweigh officer Hetherington's reasonable suspicion to initiate the traffic stop.

The magistrate judge also assessed the witnesses' credibility regarding the subject vehicle's speed prior to the traffic stop. The magistrate judge rightfully found Officer Hetherington's testimony credible because he explained the use of the pacing method to determine Ables's vehicle speed. Ables's testimony further supported that Officer Hetherington followed behind and paced his vehicle prior to pulling him over.

Finally, the magistrate judge independently assessed Ables's testimony and the contradictions. Notably, Ables's testimony contradicted the body camera footage, which supports that his recollection is not credible. Additionally, the magistrate judge concluded that Ables's testimony regarding both his vehicle's speed and noisy exhaust was not credible because

13

he admitted he was an active heroin user at the time of the traffic stop. Thus, the R&R properly concluded that Ables's perception and recollection of the events were not reliable. Accordingly, the R&R sufficiently considered the credibility of the witnesses and the alleged conflicting testimony, and Defendant's objection is **OVERRULED**.

## V.   CONCLUSION

For the reasons discussed herein, the R&R is **ADOPTED** [ECF No. 33], Defendant's objections to the R&R are **OVERRULED** [ECF No. 34], and the motion to suppress is **DENIED** [ECF No. 18].

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and all appropriate agencies.

DATED: May 6, 2024

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

14